[No. 36145.    Department Two.    August 23, 1962.]

FEDERAL NATIONAL MORTGAGE ASSOCIATION, *Respondent,*
v. WILLIAM HOLLIES CARRINGTON *et al., Defendants,*
ARBURNIA BROWNING *et al., Appellants.**

*Jack Steinberg,* for appellants.

*Heckendorn & Holte,* for respondent.

DONWORTH, J.—This is an appeal from a summary judgment foreclosing a certain real estate mortgage (and a chattel mortgage on a coal and wood range) and awarding a deficiency judgment against the original mortgagors and also against appellants whose connection with the transaction is described below.

*Reported in 374 P. (2d) 153.

Respondent is a corporation organized and existing under a 1934 act of Congress which is known as the Federal National Mortgage Association Charter Act (12 U. S. C. A., Title 12, §§ 1717 to 1723, inclusive).

The trial court, at the time of granting the motion for summary judgment, had before it the files and records in the cause and the affidavits filed by the parties and found that there was no genuine issue as to any of the material facts which were set out in its findings of facts.

These findings, which are not challenged in appellants' brief (except finding No. 1, referred to below), may be summarized as follows:

On or about January 31, 1950, the mortgage involved in this action was executed by William H. Carrington and wife and delivered to Sparkman & McLean Company, a corporation, to secure their promissory note payable to its order in the principal sum of $5,850 with four per cent interest. The detailed provisions of the note and mortgage need not be described except as hereinafter mentioned.

In March, 1950, Sparkman & McLean Company assigned, transferred, and endorsed the note and mortgage to respondent which has ever since been the owner and holder thereof for value in due course.

In February, 1953, Carrington and wife sold the mortgaged property to Chester L. Pope and wife under an executory real-estate contract subject to the mortgage. Finding No. 7 states that the contract provided, in part:

" 'The purchaser agrees: (1) To pay before delinquency all payments of whatsoever nature required to be made upon or by virtue of said mortgage.' "

In July, 1957, the vendees transferred their interest in the contract to appellants (who are Mrs. Pope's parents) by deed and assignment thereof. Finding No. 7 further states that the instrument provided, in part:

" 'The grantee hereby assumes and agrees to fulfill the conditions of said real estate contract', which includes the obligations of the purchasers to make all payments required by the mortgage."

Thereafter, in accordance with the acceleration clause in the note and mortgage, respondent elected to treat them as due and payable because of the failure of the original makers and mortgagors to pay the monthly installments of principal and interest due thereon on November 1, 1959, and on the first day of each succeeding month thereafter. In the note and mortgage, the original makers and mortgagors consented to a deficiency judgment and agreed to pay a reasonable attorney's fee in the event of foreclosure. The trial court allowed $650 as a reasonable attorney's fee in addition to the amount of its judgment for principal, interest, unpaid taxes, expense of title search and costs.

The total judgment entered June 2, 1961 (exclusive of costs) was $4,401.33, and respondent's mortgage in this sum was declared therein to be a first and paramount lien on the mortgaged property.

In appealing from the summary judgment of foreclosure entered by the trial court, appellants state their assignments of error as follows:

"1. The statement in the first paragraph of the Findings of Fact and Conclusions of Law (p. 2, lines 7-10) is not correct. That statement is as follows: 'The Court finds there is no genuine issue as to any of the material facts set out below and that the plaintiff is entitled to judgment as a matter of law.'

"2. Findings of Fact No. 1 is not supported by any evidence.

"3. Conclusions of Law No. II is not supported by the required evidence and is in conflict with the law on the subject.

"4. Conclusions of Law No. III is not supported by the required evidence and is in conflict with the law on the subject.

"5. The Decree of Foreclosure should not have been entered against the appellants herein."

In support of their first assignment of error, appellants argue that there was a genuine issue of fact as shown by the two affidavits of appellant husband and, therefore, it was error to grant respondent's motion for summary judgment. He deposed in substance as follows:

Some time after the Popes (appellants' daughter and son-in-law) had purchased the mortgaged premises from the original mortgagors, they moved to California, leaving the property vacant. Appellants were then approached by a trust officer of a Seattle bank who offered to obtain a quitclaim deed for them from the Popes in favor of appellant husband so that the latter could take over the property and save the Popes' equity therein, allegedly worth about $1,500. The trust officer informed appellant husband that he could not lose any money by so doing because he could either sell or rent the property and make monthly payments out of the proceeds.

Accordingly, appellant husband expended $942 of his own funds in remodeling the property and ultimately sold it in 1959 for $6,500 (the purchaser paying only $300 earnest money which the realtor retained as part of his commission). The purchaser took possession of the property and resided there for two or three weeks when he departed for parts unknown. Appellant husband, at the time of executing his first affidavit, had received no funds from the sale (or rental) of the premises and had lost $942 of his own funds. Of this sum $900 was loaned to appellant husband by the Seattle bank to remodel the premises under an agreement that it would be secured by a mortgage on the property and that no further payments would be required unless and until the property was sold. At that time it was anticipated that the value of the Popes' equity would be realized by appellants.

The Seattle bank prepared the deed and purchaser's assignment of the real-estate contract and sent it to the Popes, who were in California, for signature. It was executed by them and returned to the bank. Appellants had nothing to do with the preparation, execution, or recording of the document.

We have stated the substance of appellant husband's two affidavits because the only possible basis for holding that there was a genuine issue of fact presented to the trial court must be found in the statements contained therein.

After considering the substance of these affidavits,

we agree with the trial court that no genuine issue of fact existed which had any bearing on respondent's right to foreclose the mortgage and to be awarded a deficiency judgment against appellants as well as the original mortgagors.

It should be borne in mind that the trust officer had no authority to bind respondent by any agreement which he negotiated with appellants on behalf of the Seattle bank with reference to the remodeling loan. We find no support in the record for the statement in appellants' brief that the Seattle bank was a representative of respondent. Even if it were the collection agent to receive monthly payments on the note, there is no evidence that it had any authority to waive or modify respondent's rights under the mortgage. Respondent, as owner of the note and mortgage, never compromised or altered its right to insist on prompt payments being made as required therein or to accelerate the maturity thereof upon default in any of the covenants contained therein.

In July, 1957, appellants received, actually or constructively, from their daughter and son-in-law the deed and assignment of their vendee's interest in the property. As pointed out above, in discussing the court's finding of fact No. 7:

" 'The grantee hereby assumes and agrees to fulfill the conditions of said real estate contract.' "

The contract referred to included, *inter alia,* the following covenant:

" 'The purchaser agrees: (1) To pay before delinquency all payments of whatsoever nature required to be made upon or by virtue of said mortgage.' "

Appellants presumably made monthly payments and performed the other covenants of the note and mortgage during the next two years and three months before the default occurred. This fact alone may not be decisive as to their legal obligation to pay a deficiency judgment, but the obligation stated in the above quoted sentence from the deed and assignment is decisive on that point.

Appellants knew that they were in possession of the mortgaged premises under some kind of a conveyance from their daughter and son-in-law who had abandoned them. It was their responsibility to ascertain what their legal rights and obligations were. They failed to seek legal advice as to these matters. They thought that they had succeeded in selling the property for $6,500 in June, 1959, when the principal amount of the mortgage had been reduced to about $3,500. When the putative purchaser absconded a few weeks later, appellants permitted defaults to occur in the performance of the covenants of the mortgage.

No error is assigned relative to the findings of fact (except No. 1, referred to below). They must, therefore, be accepted as the facts of the case. Based thereon, the trial court was correct in granting summary judgment of the foreclosure and entering a deficiency judgment. Our decisions in *Citizens Sav. & Loan Soc. v. Chapman,* 173 Wash. 539, 24 P. (2d) 63 (1933), and *Puget Mill Co. v. Kerry,* 183 Wash. 542, 49 P. (2d) 57, 100 A. L. R. 1220 (1935), are directly in point.

Appellants' contention that respondent has no capacity to maintain a foreclosure action in this state (as stated in finding of fact No. 1) is answered by the provisions of the Federal National Mortgage Association Charter Act, which is referred to above. We can and do take judicial knowledge of the provisions of this act of Congress. Appellants' denial in their answer as to respondent's capacity to sue is admittedly based on lack of knowledge and must be disregarded.

While this case was pending in this court, the parties stipulated that the mortgaged property might be sold in the usual manner at a foreclosure sale pursuant to the trial court's decree of foreclosure, and that appellants "waive any rights to the property or its proceeds, but they hereby reserve their right to question, object to, and appeal from any personal liability asserted against them or either of them in that action."

■ Appellants' last three assignments of error are chiefly directed to their principal contention that no de-

ficiency judgment should have been entered against them. They assert that the trial court's conclusions of law No. 2 and No. 3 are not supported by the required evidence and are in conflict with the applicable law. They further contend that the decree of foreclosure should not have been entered against them.

The following language used by this court in *Puget Mill Co. v. Kerry, supra,* is applicable to the case before us:

"As above stated, this court has repeatedly enforced as against the purchaser of real estate a clause in the instrument of conveyance to him to the effect that he assumes the mortgage upon the land; this, regardless of whether or not there was any written instrument whatsoever, signed by him, wherein he bound himself to make such payment. It has always been the rule in this state that the purchaser of land promising to pay a mortgage thereon is bound by his contract, though unsigned by him. [Citations omitted.]"

In our opinion, the record shows no genuine issue of fact which would preclude the trial court from granting the motion for summary judgment and that the findings of fact (which we accept as verities) fully warranted the rendition of a deficiency judgment against appellants.

The judgment is affirmed.

FINLEY, C. J., OTT, HUNTER, and HAMILTON, JJ., concur.